**Ronald STEWART, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 18S00–9605–CR–402.

Supreme Court of Indiana.

Dec. 17, 1997.

4. This also appears to render moot Count II of Community's amended complaint.

Geoffrey A. Rivers, Muncie, for Defendant–Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant-appellant, Ronald Stewart, was convicted for dealing cocaine, a class A felony,[1] dealing in marijuana, a class D felony,[2] and found to be a habitual offender. In this direct appeal, the defendant presents eight claims of error, which we regroup and restate as follows: (1) denial of his motion to suppress the products of a search and seizure; (2) sufficiency of evidence of possession with intent to deal cocaine; (3) denial of his motion to dismiss the habitual offender charge; (4) denial of his motion for directed verdict on the habitual offender charge; (5) admission of evidence offered by the State during the habitual offender proceedings; and (6) sufficiency of evidence of habitual offender status. We affirm the trial court.

### Search and Seizure

The defendant contends that evidence seized from a hotel room and the fruits of that seizure should have been suppressed at trial. He contends that the search violated the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Because the defendant does not present any argument based upon state constitutional search and seizure jurisprudence independent of its federal counterpart, we will address only his federal constitutional claims. *Gregory–Bey v. State,* 669 N.E.2d 154, 157 n. 8 (Ind.1996); *Bivins v. State,* 642 N.E.2d 928, 936 n. 1 (Ind.1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996); *St. John v. State,* 523 N.E.2d 1353, 1355 (Ind.1988).

On February 19, 1995, a hotel maid at Lee's Inn in Muncie, Indiana, came by Room 147 slightly after noon and knocked on the door. The check-out time for the room rented under the name of Heidi Fannin had expired, so the maid had the front desk call the room. After getting no response, the front desk called a second time, again with no response. The maid then knocked again and, still getting no response, used her key to enter the room, finding that a door chain barred her entrance. She observed the defendant asleep on a couch and a candle and a "white powder substance" on the table in front of the couch. Record at 293. After a third call from the desk and no response, the police were called.

When further knocks by the police went unheeded, the manager unlocked the door, and, after observing the defendant and the powdery substance on the table, the manager unlatched the chain, allowing the police to enter the room. The police then roused the

---

1. IND.CODE § 35–48–4–1 (1993).

2. IND.CODE § 35–48–4–10 (1993).

defendant and Fannin, his girlfriend, and seized over 37 grams of cocaine, 1,189 grams of marijuana, baggies, a pager, ledger book, calculator, scales, a candle, and a Rolodex file.

 Both the State and the defendant agree that this search was conducted without a warrant. However, under the plain view doctrine the police "may seize incriminating evidence without a warrant when two conditions are met." *Taylor v. State,* 659 N.E.2d 535, 538 (Ind.1995). First, the initial police intrusion must have been permissible under the Fourth Amendment. *Id.* Second, the incriminating nature of the evidence must be immediately apparent. *Id.* Under the first prong of this analysis, it is not necessary for police to have a warrant to enter a place "when the facts suggest a reasonable belief that a person within the premises is in need of aid." *Geimer v. State,* 591 N.E.2d 1016, 1019 (Ind.1992). Here, repeated calls had gone unanswered and the maid had observed that the defendant was present but did not respond to those calls. This could have reasonably suggested that the occupants of the room, the defendant and his girlfriend, were in need of medical attention. Thus, no warrant was required for the police to enter the room. Second, as the police legitimately entered the hotel room, they could observe the white powdery substance and drug paraphernalia within plain view, as these items were sitting on the table in front of the couch on which the defendant was sleeping. The trial court's denial of the defendant's motion to suppress was proper.

### Sufficiency of the Evidence

 ■The defendant claims that there was insufficient evidence to convict him of dealing in cocaine as a class A felony. The State charged the defendant under Indiana Code Section 35–48–4–1(a)(2), which defines the offense as the possession of cocaine with the intent to deliver it. It further provides that the crime is enhanced to a class A felony if the amount of the drug involved was more than three grams. IND.CODE § 35–48–4–1(b) (1993). The defendant now contends that there was insufficient evidence to show that he possessed the drugs in question because

the evidence was circumstantial and the prosecution was not able to disprove every reasonable theory of innocence, citing *McFadin v. State,* 494 N.E.2d 983, 984 (Ind.App.1986). While a defendant may be entitled to a jury instruction to this effect, this standard is not applicable to appellate review for sufficiency of evidence. *Myers v. State,* 532 N.E.2d 1158, 1159 (Ind.1989). An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Heidi Fannin testified that the defendant gave her money and asked her to rent a room at the motel, leaving the room number in the windshield of her car. The defendant later came to the room with cocaine and proceeded to manufacture rocks of cocaine out of the material and paraphernalia he brought with him, directing Fannin in how to assist him in the process and place the rocks into baggies. She also testified that he brought with him his ledger book containing names of customers and amounts of drugs sold and money owed, in addition to a pager by which he could receive orders and a Rolodex containing names of persons whom Fannin knew had purchased drugs from the defendant in the past. Additionally a police officer testified that the defendant admitted "that he didn't make much money doing it" and that "he never sold to kids." Record at 421. Fannin's and the officer's testimony were sufficient to support the jury's conclusion that the defendant possessed cocaine with an intent to deliver it.

Because of this evidence, we need not further discuss the defendant's claim that the amount of drugs present was insufficient to infer that he possessed them for the purpose of dealing. The evidence was clearly sufficient to sustain the defendant's conviction.

## Motion to Dismiss the Habitual Charge

After the jury convicted the defendant on the two drug charges, the trial proceeded to the habitual offender stage. The jury was unable to reach a verdict on the habitual charge and the court then declared a mistrial. Before a new trial could be held on the habitual charge, the defendant filed a motion to dismiss the habitual offender count. The defendant acknowledges that our precedent permits the retrial by a second jury on a habitual offender charge when the first jury cannot reach a verdict. *Murphy v. State*, 499 N.E.2d 1077, 1084 (Ind.1986). The defendant urges us to overturn our precedent, arguing that the plain language of the statute requires the same jury deciding the underlying felony charges to also decide the habitual charge and, consequently, the defendant cannot be retried if the jury is unable to reach a verdict. We decline.

## Motion for Directed Verdict on Habitual Offender Charge

The defendant also contends that the trial court erred in denying his motion for directed verdict filed before the commencement of his second habitual offender phase trial. The motion, denominated as a "Motion for Directed Verdict of Not Guilty on Count III, Habitual Offender," asserted that there was no evidence that he was convicted of a Kentucky felony, and requested the trial court, "sitting as a 13th juror," to direct a verdict of not guilty, citing both Trial Rules 59(J)(7) and 50(A)(6). Record at 612. He claims that no evidence was presented to support the required finding that a conviction from Kentucky was a felony as required by the habitual offender statute.

A trial court may enter judgment under Trial Rule 59(J)(7) upon determination that a jury verdict is clearly erroneous as contrary to or not supported by the evidence. *State v. Kleman*, 503 N.E.2d 895, 896 (Ind. 1987). However, because the first habitual offender phase jury did not reach a verdict, the relief sought under Rule 59(J)(7) was not available to the defendant.

Pursuant to Trial Rule 50, a judgment on the evidence is properly granted only where there is a total absence of evidence on some essential issue or where the evidence is without conflict and susceptible to only one inference and that inference is in favor of the defendant. Ind.Trial Rule 50(A); *Lowery v. State*, 547 N.E.2d 1046, 1051 (Ind. 1989); *Proctor v. State*, 272 Ind. 357, 360, 397 N.E.2d 980, 983 (1979).

Our habitual offender statute requires proof of two prior unrelated felonies in order to warrant a finding that the defendant is a habitual offender. IND.CODE § 35–50–2–8 (1993). A felony conviction is defined as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year." IND.CODE § 35–50–2–1(b) (1993). It is the length of the term of imprisonment that is important, not whether the crime is classified by the other jurisdiction as a felony or misdemeanor. *Beach v. State*, 496 N.E.2d 43, 45 (Ind.1986).

Here there was not a total absence of evidence. The record reveals that evidence was presented to the trial court of the indictment and judgment of conviction pursuant to a guilty plea in the Circuit Court of Kenton County, Kentucky. The indictment refers to the statute under which the defendant was charged and convicted. KY.REV.STAT.ANN. § 527.040 (Michie 1990). The trial court took judicial notice of the law of Kentucky under Indiana Evidence Rule 201(b). The Kentucky statute in force provided that a conviction for possession of a handgun by a convicted felon is classified as a D felony. Although not discussed at trial, we now take judicial notice [3] that the sentence for a D felony at that time was not less than one nor more than five years. KY.REV.STAT.ANN. § 532.060 (Michie 1990). This meets the definition of a felony under our habitual offender statute and, thus, the trial court properly denied the defendant's motion for directed verdict.

---

**3.** Indiana Evidence Rule 201(f) states, "[j]udicial notice may be taken at any stage of the proceed-ing."

### Evidentiary Foundation
### for State's Exhibits

The defendant contends that State's Exhibit 33, introduced into evidence during the habitual offender proceedings, lacked sufficient foundation for admission into evidence and that the evidence was thus insufficient to support a habitual offender finding. The defendant claims that this exhibit, consisting of court records from Kentucky, did not comply with Indiana Trial Rule 44(A)(1). The rule provides that an official record of any state or commonwealth may be evidenced by a copy attested by the officer having the legal custody of the record or by a deputy. Proof that the officer has custody may be shown by a certificate of the political subdivision in which the record is kept and authenticated by the seal of the office. Here a certificate preceded the records from Kentucky which stated that the records were recorded in the office of the Circuit Clerk of Kenton County and was attested to by "Mary Ann Woltenberg, Clerk. By Judy Stall, D.C." Record at 683. While there is no independent verification, we infer that "D.C." signifies Deputy Clerk. Further, the certificate was stamped with a seal of the Clerk's office, thus meeting the requirements of T.R. 44(A)(1). The trial court did not err in overruling the defendant's objection to the exhibit.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.